UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KELLY AUSTIN,

       Plaintiff,                                  Hon. Richard Alan Enslen

v.                                                   Case No. 1:05-CV-536

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

The Commissioner determined that Plaintiff is not disabled as defined by the Act. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 34 years of age at the time of the ALJ's decision. (Tr. 18). She successfully completed high school and worked previously as a cashier and telemarketer. (Tr. 18, 72, 88-94).

Plaintiff applied for benefits on July 12, 2002, alleging that she had been disabled since June 5, 2002, due to spinal injury, severe pain, nerve damage, and fatigue. (Tr. 46-48, 71, 256-59). Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 32-45, 261-71). On February 11, 2004, Plaintiff appeared before ALJ Thomas Walters, with testimony being offered by Plaintiff and vocational expert, Michelle Ross. (Tr. 276-95). In a written decision dated May 27, 2004, the ALJ determined that Plaintiff was not disabled. (Tr. 17-26). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 6-9). Plaintiff subsequently initiated this pro se appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## **MEDICAL HISTORY**

Plaintiff was involved in a car accident in 1990. (Tr. 128). She subsequently began experiencing pain in her right leg and at a later (unspecified) date underwent a lumbar hemilaminectomy at L4-5. *Id.*

X-rays of Plaintiff's lumbosacral spine, taken on May 30, 1997, revealed "small, 5-6 mm bone fragments along the posterior aspect of the inferior L4 end plate" and "mild" degenerative changes at L4-5 and L5-S1 "without advanced disc narrowing." (Tr. 124). The examination revealed no evidence of spondylolysis, spondylolisthesis, disc narrowing, acute fracture, or interosseous lesion. *Id.*

X-rays of Plaintiff's shoulders, hips, and knees, taken on April 4, 2002, were all "normal." (Tr. 123).

X-rays of Plaintiff's cervical spine, taken on May 21, 2002, revealed "mild" degenerative changes at C5-6. (Tr. 122). X-rays of her lumbosacral spine, taken the same day, revealed a degenerated disc at L5-S1. *Id.*

On July 23, 2002, Plaintiff completed a questionnaire describing her activities. (Tr. 80-86). Plaintiff reported that she is "consumed" with pain and is always fatigued. (Tr. 82). She reported that she can "maybe" walk a few blocks and stand for 15-30 minutes, but cannot lift any amount. (Tr. 82-83). On July 29, 2002, Plaintiff's boyfriend completed a similar questionnaire. (Tr. 96-101). He reported that Plaintiff cooks, performs light housekeeping duties, reads, drives, cares for her son, plays cards, pulls weeds out of the yard, cares for her personal needs, goes fishing, and makes necklaces. *Id.*

On August 14, 2002, Plaintiff was examined by Dr. Akram Mahmoud. (Tr. 128-29). Plaintiff reported that she was experiencing pain in her neck, shoulders, lower back, buttocks, and right lower extremity. (Tr. 128). Plaintiff exhibited limited range of movement in her cervical spine. (Tr. 128-29). Tinel's sign[1] was negative. (Tr. 129). Plaintiff exhibited 5/5 motor strength and the doctor observed no evidence of neurological abnormality. *Id.* Dr. Mahmoud diagnosed Plaintiff with cervicalgia[2] and instructed her to participate in physical therapy. (Tr. 129, 233).

X-rays of Plaintiff's cervical spine, taken on August 18, 2002, revealed "muscle strain" and "mild" arthritic changes. (Tr. 130). An MRI of Plaintiff's cervical spine, taken the same day, revealed "mild" disc bulging at C3-4, "small" herniations at C5-6 and C6-7, and a "small" disc bulge at C7-T1. (Tr. 130-31).

On September 4, 2002, Plaintiff participated in a consultive examination conducted by Dr. Bharti Sachdev. (Tr. 135-37). Plaintiff reported that she was experiencing back and shoulder pain which she rated 10 on a scale of 1-10. (Tr. 135). Plaintiff exhibited mildly limited range of spinal motion and "constantly groan[ed] with pain." (Tr. 136, 138). The doctor observed no evidence of neurological deficiency or inflammatory arthritis "of any of the joints." (Tr. 136). Plaintiff walked with a "stable" gait and was able to heel/toe walk. *Id.* The doctor also observed Plaintiff's MRI results, noting that "it is hard to correlate the MRI findings with her pain." (Tr. 137).

---

[1] Tinel's test (or Tinel's sign) refers to a tingling sensation at the end of a limb produced by tapping the nerve at a site of compression or injury. This test is also used to detect the presence of carpal tunnel syndrome. J.E. Schmidt, *Schmidt's Attorneys' Dictionary of Medicine* T-140 (Matthew Bender) (1996); Frank L. Urbano, M.D., *Tinel's Sign and Phalen's Manuever: Physical Signs of Carpal Tunnel Syndrome*, Hospital Physician, July 2000 at 39.

[2] Cervicalgia is defined as neck pain (caused by muscle tension) which does not radiate outwards. *See* Cervicalgia, available at http://www.sportsinjuryclinic.net/cybertherapist/back/upperbackneck/neckpain.htm (last visited on April 19, 2006).

On October 25, 2002, Plaintiff participated in a consultive examination performed by Thomas Horner, Ph.D. (Tr. 151-63). Plaintiff reported that she was depressed and "in pain quite a bit of the time." (Tr. 152). The doctor reported that Plaintiff was "tearful" and "in evident physical discomfort." (Tr. 155). The results of a mental status examination revealed that Plaintiff was depressed and experiencing "diminished" motivation, but were otherwise unremarkable. (Tr. 155-61). Dr. Horner diagnosed Plaintiff with adjustment disorder with depressed/anxious mood. (Tr. 161). Plaintiff's GAF score was rated as 55.[3]

On November 19, 2002, Dr. Stephanie Heard completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations. (Tr. 170-83). Determining that Plaintiff suffered from an adjustment disorder with depressed/anxious mood, the doctor concluded that Plaintiff satisfied the Part A criteria for Section 12.04 (Affective Disorders) of the Listing of Impairments. (Tr. 171-79). The doctor determined, however, that Plaintiff failed to satisfy any of the Part B criteria for this particular impairment. (Tr. 180). Specifically, the doctor concluded that Plaintiff suffered mild restrictions in the activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and never experienced episodes of deterioration or decompensation in work or work-like settings. *Id.*

Dr. Heard also completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and

---

[3] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 30 (4th ed. 1994) (hereinafter DSM-IV). A GAF score of 55 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34.

memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (Tr. 166-69). Plaintiff's abilities were characterized as "moderately limited" in six categories. With respect to the remaining 14 categories, however, the doctor reported that Plaintiff was either "not significantly limited" or that there existed "no evidence of limitation." *Id.*

On December 11, 2002, Plaintiff was examined by Dr. Mahmoud. (Tr. 232). Plaintiff reported that physical therapy had reduced her pain by fifty percent. *Id.*

On February 27, 2003, Plaintiff participated in an electrodiagnostic examination of her left upper extremity, the results of which revealed no evidence of radiculopathy or neuropathy. (Tr. 184). X-rays of Plaintiff's thoracic spine, taken on May 10, 2003, revealed "mild" arthritic changes in "the lower thoracic spine." (Tr. 210).

At the administrative hearing, Plaintiff testified that she experiences pain in her neck, back, hips, and right knee "all the time." (Tr. 283). Plaintiff testified that on average her pain rated 9.5 on a scale of 1-10. (Tr. 284). She testified that cannot even walk one block and is unable to stand for more 10 minutes. (Tr. 285). She testified that she can sit for 30 minutes and lift five pounds. (Tr. 285-86).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[4] If the Commissioner can make a

---

[4] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1420(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

**B. The ALJ's Decision**

The ALJ determined that Plaintiff suffers from the following severe impairments: (1) back disorders and (2) depression. (Tr. 20). The ALJ concluded that these impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. *Id.* The ALJ determined that while Plaintiff was unable to perform her past relevant work, there existed a significant number of jobs which she could perform despite her limitations. (Tr. 20-24). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

**1. The ALJ's Decision is Supported by Substantial Evidence**

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable

---

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy.  *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure.  While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform unskilled work activities subject to the following restrictions: (1) she can lift ten pounds, (2) she can sit for six hours during an 8-hour workday, (3) she cannot engage in prolonged standing or walking, (4) she cannot perform repetitive rotation or flexion of her neck, and (5) she can only perform work which requires limited contact with the public and co-workers.  (Tr. 22).

With respect to Plaintiff's mental impairments the ALJ further concluded that Plaintiff experiences mild restrictions in the activities of daily living, mild to moderate difficulties in maintaining social functioning, mild to moderate difficulties maintaining concentration, persistence or pace, and has never experienced episodes of deterioration or decompensation in work or work-like settings.  (Tr. 21).  After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff was unable to perform her past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964.

While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Michelle Ross.

The vocational expert testified that there existed approximately 19,200 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 293). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990) (a finding that 2,500 jobs existed which the claimant could perform constituted a significant number); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988) (the existence of 1,800 jobs which the claimant could perform satisfied the significance threshold).

    a. The ALJ Properly Considered Plaintiff's Impairments

  Plaintiff asserts that the ALJ committed reversible error by failing to "assess the effects" of her alleged obesity.

  At step two of the sequential disability analysis articulated above, the ALJ must determine whether the claimant suffers from a severe impairment. The Sixth Circuit has held that where the ALJ finds the presence of a severe impairment at step two and proceeds to continue through the remaining steps of the analysis, the alleged failure to identify as severe some other impairment does not constitute reversible error so long as the ALJ considered the entire medical record in rendering his decision. *See Maziarz v. Sec'y of Health and Human Services*, 837 F.2d 240, 244 (6th Cir. 1987); *Ortiz-Rosado v. Commissioner of Social Security*, 2001 WL 700835 at *1 (6th Cir., June 12, 2001).

  Here, the ALJ determined that Plaintiff suffered from severe impairments at step two of the sequential analysis and continued with the remaining steps thereof, noting that he gave "careful consideration" to "the entire record," an assertion supported by his detailed discussion of Plaintiff's impairments. (Tr. 18-24).

  Moreover, the ALJ was not required to assess Plaintiff's alleged obesity because the record contains no evidence that such constituted a severe impairment or imposed on Plaintiff any functional limitations. *See Essary v. Commissioner of Social Security*, 2004 WL 2452596 at *5 (6th Cir., Oct. 28, 2004) (ALJ not required to assess claimant's obesity where she "failed to present evidence of any functional limitations resulting specifically from her obesity"); *Cranfield v. Commissioner of Social Security*, 2003 WL 22506409 at *5 (6th Cir., Nov. 3, 2003) (same).

11

Furthermore, the ALJ's RFC determination is supported by substantial evidence. The Court concludes, therefore, that the ALJ properly considered and evaluated Plaintiff's impairments.

### b. The ALJ Properly Relied on the Vocational Expert's Testimony

As noted above, the vocational expert testified that there existed approximately 19,200 jobs which a person with Plaintiff's RFC could perform. (Tr. 293). Specifically, the vocational expert identified the following types of jobs: bench assembler (4,500 jobs), sorter (5,000 jobs), and packager (9,700 jobs). *Id.* When asked whether her testimony was consistent with the Dictionary of Occupational Titles (DOT), the vocational expert indicated that the packager jobs were "described at a higher exertional level in the DOT." (Tr. 294). With respect to the assembler and sorter positions, the vocational expert identified no inconsistency between her testimony and the DOT. Plaintiff asserts that the ALJ improperly relied on the vocational expert's testimony contrary to the requirements of Social Security Ruling 00-04p. Plaintiff further asserts that the hypothetical question posed to the vocational expert did not accurately describe the various limitations from which she suffers.

According to Social Security Ruling 00-04p, whenever a vocational expert "provides evidence about the requirements of a job or occupation, the [ALJ] has an affirmative responsibility to ask about any possible conflict between that [vocational expert] evidence and information provided in the DOT [Dictionary of Occupational Titles]." Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions, SSR 00-04p, 2000 WL 1898704 at *4 (S.S.R., Dec. 4, 2000).

In this instance, however, the ALJ did not ask the vocational expert to explain the discrepancy between her testimony regarding packager jobs and the information contained within the DOT. This failure is harmless, however, because even if the vocational expert's testimony regarding packager jobs is completely disregarded there still exist 9,500 assembly and sorting jobs identified by the vocational expert which Plaintiff can perform. As previously noted, with respect to these jobs the vocational expert identified no inconsistency between her testimony and the DOT. Plaintiff disputes this conclusion, however, asserting that there does exist a discrepancy between the DOT and the vocational expert's testimony. Plaintiff further asserts that in such a circumstance "the DOT provisions must prevail."

First, Plaintiff is incorrect that the DOT overcomes a vocational expert's testimony where the two conflict. *See* Social Security Ruling 00-04p, 2000 WL 1898704 at *2 ("[n]either the DOT nor the VE or VS evidence automatically 'trumps' when there is a conflict"); *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003) ("the ALJ and consulting vocational experts are not bound by the [DOT] in making disability determinations because the Social Security regulations do not obligate them to rely on the [DOT's] classifications").

Moreover, it is not clear that the information contained in the DOT is inconsistent with the vocational expert's testimony regarding the existence of specific assembly and sorting jobs which Plaintiff can perform. As noted above, the vocational expert did not indicate that such was the case. While Plaintiff has identified certain portions of the DOT which *may* conflict with the vocational expert's testimony, it must be remembered that "the DOT only lists the maximum requirements of occupations as they are generally performed and not as they are performed in specific instances." *Dunlap v. Barnhart*, 2004 WL 784837 at *14 (W.D. Tenn., Mar. 15, 2004)

(citing Social Security Ruling 00-04p). Thus, it is not clear that the vocational expert's testimony regarding specific assembly and sorting jobs was inconsistent with the DOT's description of such jobs.

However, even if Plaintiff were correct that the vocational expert's testimony regarding such jobs was inconsistent with the DOT, the result is the same. As courts have recognized, Social Security Ruling 00-04p only requires the ALJ to inquire about discrepancies between the DOT and a vocational expert's testimony when such discrepancies have been identified. *See Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002) (where no discrepancy has been identified, the ALJ 'is entitled to accept the vocational expert's conclusion, even if that conclusion differs from the [DOT]); *Jones v. Barnhart*, 2005 WL 66072 at *12 (N.D. Ill., Jan. 10 ,2005) (same).

Moreover, Plaintiff (who was represented by counsel at the administrative hearing) had an obligation to question the vocational expert if she thought that the vocational expert's testimony regarding the assembly and sorting jobs was inconsistent with the DOT. *See McLachlan v. Barnhart*, 2004 WL 2036294 at *12 (N.D. Ill., Sept. 8, 2004) ("SSR 00-04p does not place the sole duty on the ALJ to question the vocational expert regarding any inconsistencies with the DOT and to resolve any conflicts before relying on the vocational expert's testimony") (citing *Buchholtz v. Barnhart*, 98 Fed. Appx. 540, 546 (7th Cir. 2004)).

Furthermore, it is recognized that identifying alleged discrepancies between the DOT and the vocational expert's testimony at this stage of the proceedings is inappropriate. *See Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002) ("[r]aising a discrepancy [between the vocational expert and the DOT] only after the hearing, as Donahue's lawyer did, is too late"); *Jones v. Barnhart*, 2005 WL 66072 at *12 (N.D. Ill., Jan. 10 ,2005) (same) ("an ALJ must explain a discrepancy

between the VE and DOT only when the discrepancy has been identified, and rasing a discrepancy after a hearing has ended is untimely").

In sum, while the ALJ failed to question the vocational expert about the discrepancy between her testimony about packager jobs and the DOT, as discussed above this error was harmless. Moreover, Social Security Ruling 00-04p did not obligate the ALJ to inquire as to any alleged discrepancy between the DOT and the vocational expert's testimony regarding the existence of assembly and sorting jobs because no such discrepancy was identified.

Plaintiff also asserts that the ALJ relied upon the response to an inaccurate hypothetical question. While the ALJ may satisfy his burden through the use of hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996). The hypothetical question which the ALJ posed to the vocational expert simply asked whether there existed jobs which an individual could perform consistent with Plaintiff's limitations, to which the vocational expert indicated that there existed approximately 19,200 such jobs. Because there was nothing improper or incomplete about the hypothetical questions he posed to the vocational expert, the ALJ properly relied upon her response thereto.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


Date: June 5, 2006                                         /s/ Ellen S. Carmody
                                                           ELLEN S. CARMODY
                                                           United States Magistrate Judge